

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-11-0192-CR

_____

CHARLES BIBLE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2010-429098, Honorable Blair Cherry, Presiding

April 8, 2013

## MEMORANDUM OPINION

Before Quinn, C.J., and Campbell and Pirtle, JJ.

Appellant Charles Bible appeals from his jury conviction of the offense of possession of a controlled substance with intent to deliver, in the amount of four grams or more but less than two hundred grams and the resulting sentence of forty-five years of imprisonment. Through three issues, appellant contends the trial court erred. We will affirm.

Background

On February 5, 2010, Lubbock police officers obtained a search warrant for an apartment. A narcotics officer with the department wrote the affidavit requesting the warrant and signed it in front of a Lubbock County Court-at-Law judge. As presented to the judge, the jurat on the affidavit read, "SWORN AND SUBSCRIBED to before me, the undersigned authority, on this ___ day of ___, 2009." Likewise, the signature block on the warrant contained a line reading, "ISSUED AT ____ o'clock,__.M. on this___ day of ___ 2009, to certify which witness my hand." The judge completed the jurat on the affidavit by writing in the day and month,[1] and completed the signature block on the warrant by writing in the time, day and month,[2] then signed the jurat and the warrant. Neither the officer nor the judge noticed, however, that the year printed on the jurat and warrant was 2009, not 2010. Consequently, the jurat and warrant contained the incorrect date of February 5, 2009 rather than the dates of their actual signing, February 5, 2010. No other dates appear in either document.

Officers executed the warrant at the apartment on February 9, 2010. Officers encountered, and apprehended, an individual named Rochelle Green as she was leaving the apartment. Inside, they found appellant in the bedroom, and arrested him as well. In the apartment they also found large amounts of cash, digital scales, drug

---

[1] As completed, the jurat reads, "SWORN AND SUBSCRIBED to [sic] before me, the undersigned authority, on this 5th day of Feb., 2009."

[2] As completed, the line on the search warrant reads, "ISSUED AT 3:37 o'clock, P.M. on this 5th day of Feb., 2009, to certify which witness my hand."

paraphernalia, fifty grams of cocaine in three locations, and marijuana. The officers also seized a letter from appellant, addressed to Green at the apartment, in which appellant referred to himself as "Rat Dog" and said he had "the best dope around."

Appellant plead not guilty and opted to be tried by a jury.[3] Prior to trial, appellant filed a motion to suppress the evidence found during the search, pointing to the discrepancy in the dates. The trial court denied his motion. Before closing arguments, appellant requested a jury instruction requiring the jury to make a factual determination about the validity of the search warrant, again pointing out the discrepancy in the dates. The trial court denied the request.

The letter from appellant to Green was admitted into evidence. Appellant objected to its admission and the trial court overruled several of his objections. The letter was admitted with redactions. The redactions are not at issue on appeal.

Analysis

Denial of Motion to Suppress

In appellant's first issue, he asserts that the affidavit and search warrant were dated February 5, 2009 but the warrant was not executed until February 9, 2010. He contends that from the face of the documents, it appears 371 days elapsed from the date the warrant was signed to the date it was executed, a period of time well outside the statutory limit. Appellant argues that because the court did not hear testimony or

_____

[3] Appellant's indictment included two enhancement paragraphs to which he plead true at the punishment stage of trial.

receive evidence other than the affidavit and search warrant at the hearing on his motion to suppress, it abused its discretion in denying his motion.

We review a trial court's ruling on a motion to suppress using an abuse of discretion standard. *State v. Dixon,* 206 S.W.3d 587, 590 (Tex.Crim.App. 2006). The trial court's ruling will be sustained if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.* Almost total deference is given to a trial court's express or implied determinations of historical facts, and the trial court's application of the law of search and seizure to those facts is reviewed *de novo. State v. Ross,* 32 S.W.3d 853, 856 (Tex.Crim.App. 2000); *Guzman v. State,* 955 S.W.2d 85, 88 n.3; 90-91 (Tex.Crim.App. 1997).

A search warrant must be executed within three days "from the time of its issuance" unless the period is shortened by the magistrate. Tex. Code Crim. Proc. Ann. art 18.06(a) (West 2011). The time allowed for execution of the warrant, however, is "three whole days," exclusive of the day of its issuance and the day of its execution. Tex. Code Crim. Proc. Ann. art. 18.07 (West 2011). When a search warrant is not executed within the time period allowed, it becomes "functus officio," having no further official force or effect. *Green v. State*, 799 S.W.2d 756, 759 (Tex.Crim.App. 1990). If the legality of a search depends on a warrant that has become functus officio, that search is unauthorized. *Id.*

When the validity of a search warrant is questioned, "the warrant and supporting affidavit must be read together and a determination of validity is made according to the totality of the circumstances, the yardstick of measurement with the question of

4

probable cause." *Id.* at 760. Purely technical discrepancies in dates or times do not automatically vitiate the validity of the search. *Id.* at 759; *Salzido v. State,* No. 07-10-0031-CR, 2011 Tex.App. LEXIS 3549 (Tex.App.—Amarillo May 11, 2011, no pet.) (mem. op., not designated for publication). Due to the nature of such technical errors, a trial court is allowed to hear explanatory testimony, which may cure the defect. *Id.* at 760.

Courts have found the same types of facial discrepancies as those in this case to be cured through explanatory testimony. *See, e.g., Rougeau v. State,* 738 S.W.2d 51, 663 (Tex.Crim.App. 1987) (upholding warrant because evidence showed affidavit dated January 6, 1977, instead of January 6, 1978, was clearly a typographical error), *overruled on other grounds by Harris v. State,* 784 S.W.2d 5, 19 (Tex.Crim.App. 1989); *Lyons v. State*, 503 S.W.2d 254, 256 (Tex.Crim.App. 1973) (affirming trial court's judgment that facial discrepancy due to incorrectly dated search warrant was cured by explanatory testimony of police officer requesting warrant); *Martinez v. State*, 162 Tex. Crim. 356, 285 S.W.2d 221, 222 (Tex.Crim.App. 1955) (holding that incorrectly dated jurat to supporting affidavit would not "vitiate the warrant" based on explanatory testimony heard by trial court).

A trial court's ruling on a suppression issue is not a final judgment and does not necessarily involve an ultimate issue in a criminal prosecution. *State v. Rodriguez,* 11 S.W.3d 314, 322 (Tex.App.—Eastland 1999, no pet.); *McKown v. State,* 915 S.W.2d 160 (Tex.App.—Fort Worth 1996, no pet.). A trial court may reconsider its pretrial suppression hearing ruling if it appears necessary to the due administration of justice. *Montalvo v. State,* 846 S.W.2d 133, 137 (Tex.App.—Austin 1993, no pet.).

At the hearing on appellant's motion to suppress, appellant asked the trial court to look at the date on the search warrant and affidavit. The court examined the documents and inquired of the State the date of the execution of the search warrant. The prosecutor responded it was executed on February 9, 2010. The court asked if the warrant was executed "[f]our days after it was issued" and the State answered affirmatively. The court did not hear any evidence at that time and denied the motion after considering the documents and the State's answers to its questions.

At trial, the parties revisited the issue of the discrepancy in the dates. The officer who prepared the affidavit and search warrant told the court, "[t]he search warrant was executed on February the 9th of 2010." The officer further testified the 2009 year on the search warrant was an "error" that "was something that wasn't caught by myself or the judge who signed it."

Here, even if the trial court had erred by denying appellant's pre-trial motion to suppress without hearing more formal and direct evidence concerning the dates, the trial court was free to reconsider its ruling when additional evidence was introduced at trial. Testimony was offered at trial to explain the discrepancy. The incorrect dates on the affidavit and warrant were the type of purely technical errors that may be explained and the explanation may be considered among the totality of the circumstances determining the validity of the warrant. *Green*, 799 S.W.2d at 760. The court properly heard evidence outside the instruments themselves to explain the discrepancy. *Id.* The officer's testimony that the warrant was issued and executed in 2010, not a year earlier, and that the conflicting date was a typographical error, was undisputed. Because the

court thus did not err by overruling the motion to suppress, we overrule appellant's first issue.

Denial of Requested Jury Instruction

In addition to raising the issue pre-trial, however, appellant requested an instruction pursuant to article 38.23(a), to permit the jury to resolve the issue of the date of the warrant's issuance. Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2011). The trial court denied appellant's request, stating that the 2009 date on the warrant "boils down to the typographical error." In appellant's second issue on appeal, he argues the trial court erred in denying his request.

In our review of alleged jury charge error, we first determine whether the charge contains error. *Barrios v. State,* 283 S.W.3d 348, 350 (Tex.Crim.App. 2009); *Ngo v. State,* 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). If it does, then we must determine whether the appellant suffered harm. *Barrios,* 283 S.W.3d at 350; *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1985). If there was error and appellant objected to the error at trial, reversal is required if the error "is calculated to injure the rights of the defendant," which courts have defined to mean that there is "some harm." *Almanza*, 686 S.W.2d at 171. Harm from a charge error consisting of the failure to include an article 38.23 instruction is evaluated under the *Almanza* analysis. *Atkinson v. State*, 923 S.W.2d 21, 27 (Tex.Crim.App. 1996). When considering the actual degree of harm, we examine (1) the entire jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the argument of counsel and (4) any other

relevant information revealed by the record of the trial as a whole. *Almanza,* 686 S.W.2d at 171.

A trial court must give an article 38.23 instruction if the evidence raises a disputed fact issue about whether evidence was lawfully obtained. Tex. Code Crim. Proc. Ann. art. 38.23 (West 2011); *Madden v. State*, 242 S.W.3d 504, 510 (Tex.Crim.App. 2007). A defendant is entitled to the submission of a jury instruction under article 38.23 if: (1) the evidence heard by the jury raises a fact issue; (2) the evidence on that fact is affirmatively contested; and (3) that contested factual issue is material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden*, 242 S.W.3d at 510. "[I]f other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence." *Id.* Thus, the disputed fact must be essential to determining the lawfulness of the challenged conduct. *Id.* at 511. A court considers only the evidence heard by the jury to determine whether an article 38.23 instruction should be given. *Madden*, 242 S.W.3d at 510.

During cross-examination of a State's witness, appellant's counsel introduced the search warrant affidavit and search warrant into evidence. The warrant and affidavit were admitted and published to the jury. So, before the jury were arrayed the 2009 dates on the affidavit and warrant, as against the undisputed testimony of the person who prepared the affidavit that those dates were typographical errors and the documents actually were signed four days before the warrant was executed, and appellant arrested, in 2010.

8

Assuming, without deciding, that the 2009 date appearing on the affidavit and warrant are, in this context, the type of affirmative evidence required to raise a disputed fact issue under article 38.23, *see Madden,* 242 S.W.3d at 513, and further assuming, without deciding, that the trial court erred by not instructing the jury pursuant to article 38.23, we would be unable to agree with appellant he suffered any harm from the error. As noted, assessment of harm requires, *inter alia*, consideration of the entire record of evidence before the jury. The record is abundantly clear that the search occurred in February 2010, not a year earlier. Indeed, some items seized during the search, including a letter postmarked in July 2009, establish that fact conclusively. And nothing in the record, except for the printed year 2009 appearing on the affidavit and warrant, even suggests that the events described in the affidavit occurred a year before the search. As noted, no evidence disputed the testimony of the officer who prepared and presented the affidavit that the 2009 date was a typographical error. Taking the record as a whole, we see no harm to appellant flowing from the omission of an article 38.23 instruction asking the jury to determine whether the affidavit and warrant were signed in 2009. We resolve appellant's second issue against him.

Admission of Letter

In appellant's last issue, he argues the trial court's admission of appellant's letter to Green was error. The letter is dated in July 2009, some seven months before the search. In response to objections raised by appellant, the letter was redacted to remove some information, including the return address indicating appellant was incarcerated when he wrote it. After the redactions, the letter the jury saw still contained appellant's reference to himself as "Rat Dog" and his statement that, at an unspecified

time, he had the "best dope around." Appellant argues the letter was not relevant, and that it should have been excluded under Rule of Evidence 403.

Appellate courts review a trial court's ruling on the admission of evidence using an abuse of discretion standard. *Salazar v. State,* 38 S.W.3d 141, 153 (Tex.Crim.App. 2001). The trial court's evidentiary ruling must be upheld if it is within the "zone of reasonable disagreement." *Id.; Montgomery v. State,* 810 S.W.2d 372, 386-87 (Tex.Crim.App. 1991) (op. on reh'g).

Under the Texas Rules of Evidence, evidence is relevant if it makes the existence of a fact that is of consequence to the determination of the action more probable than it would be without the evidence. *See* Tex. R. Evid. 401; *Watterson v. State*, No. 07-07-0153-CR, 2009 Tex.App. LEXIS 2938, at *7 (Tex.App.--Amarillo April 29, 2009, no pet.) (mem. op. not designated for publication) (*citing Moses v. State*, 105 S.W.3d 622, 625 (Tex.Crim.App. 2003)).

Addressing an objection under Rule 403, the court determines whether the probative value of the complained-of evidence is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. The balancing test involves these factors: 1) the inherent probative force of the proffered item of evidence along with 2) the proponent's need for that evidence against 3) any tendency of the evidence to suggest decision on an improper basis, 4) any tendency of the evidence to confuse or distract the jury from the main issue, 5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and 6) the likelihood that presentation of the evidence will consume an inordinate amount of time

or repeat evidence already admitted. *See Casey v. State*, 215 S.W.3d 870, 880 (Tex.Crim.App. 2007).

Appellant was tried for the offense of possession of a controlled substance with intent to deliver. Although appellant was present in the apartment at the time of the search, the one-bedroom apartment was leased in Green's name, and two other men were listed in the search warrant as the subjects of the search. As is apparent from his cross-examination of State's witnesses, appellant attempted at trial to distance himself from Green and the drugs and paraphernalia found in the apartment, and to suggest their greater connection with Green and perhaps others. The letter, in which appellant expressed his love for Green, had probative value to link appellant with Green, and by extension, with her apartment and its contents. In the context of the letter, his statement he had the "best dope around" can be seen as indicative of a willingness to provide Green and perhaps others with "dope," further connecting him with Green and suggesting an intent to deliver. The trial court did not abuse its discretion by determining the evidence was relevant. Tex. R. Evid. 401; *Salazar,* 38 S.W.3d at 153.

Nor can we accept appellant's contention the trial court committed an abuse of discretion by concluding the letter's probative value was not substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. Containing appellant's own words describing his love for Green and his great desire to be with her, the letter is strongly probative to rebut any contention his presence in the one-bedroom apartment was merely fortuitous. In addition to its probative value as an indicator of a willingness to

deliver "dope,"[4] appellant's description of the "dope" he possessed as the "best around" tends to show his knowledge of illegal drugs. The letter thereby assisted the State with its proof appellant's possession of these drugs was "knowing," as the indictment alleged. The evidence thus addressed main issues in the case, and did not distract the jury from the main issues, nor do we see any tendency of the letter to suggest the jury decided appellant's guilt on an improper basis. Finally, the presentation of the letter took a minimal amount of time when it was read aloud and involved only the additional testimony of an officer explaining the meaning of "dope" and other terms relevant to dealing contraband. Having considered all the factors, we see no merit in appellant's Rule 403 objection. *Casey,* 215 S.W.3d at 880; *Montgomery,* 810 S.W.2d at 391. Accordingly, we overrule appellant's third issue.

## Conclusion

Having resolved each of appellant's issues against him, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.

---

[4] Evidence of intent is generally shown by circumstantial evidence. *Gaither v. State,* 383 S.W.3d 550, 553 (Tex.App.—Amarillo 2012, no pet.).